July 27, 1993

UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

No. 92-1993

TRUCK DRIVERS & HELPERS UNION, LOCAL NO. 170,
Petitioner,

v.

NATIONAL LABOR RELATIONS BOARD,
Respondent.

GIRARDI DISTRIBUTORS, INC.,
Intervenor.

ERRATA SHEET

The opinion of this Court issued on May 26, 1993, is amended
as follows:

Page 5, line 21, capitalize "u" in "union".

Page 5, line 23, capitalize "u" in "union".

Page 12, line 8, substitute "183679" for "18679".

Page 19, footnote 12, line 5, substitute "111 S.Ct. 671" for
"xx U.S. xx".

UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

No. 92-1993

TRUCK DRIVERS & HELPERS UNION, LOCAL NO. 170,

Petitioner,

v.

NATIONAL LABOR RELATIONS BOARD,

Respondent.

GIRARDI DISTRIBUTORS, INC.,

Intervenor.

ON PETITION FOR REVIEW OF AN ORDER OF

THE NATIONAL LABOR RELATIONS BOARD

Before

Torruella, Cyr and Stahl,
Circuit Judges.

Randall E. Nash, with whom Grady and Dwyer, was on brief for

petitioner.
Robert J. Englehart, Attorney, with whom Jerry M. Hunter,

General Counsel, Yvonne T. Dixon, Acting Deputy General Counsel,

Nicholas E. Karatinos, Acting Associate General Counsel, Aileen

A. Armstrong, Deputy Associate General Counsel, and Linda

Dreeben, Supervisory Attorney, National Labor Relations Board,

were on brief for respondent.
Henry F. Telfeian, with whom Keck, Mahin & Cate, was on

brief for intervenor.

May 26, 1993

TORRUELLA, Circuit Judge. In this case we review a

decision and order of the National Labor Relations Board (the

"Board"). The General Counsel of the Board brought an unfair

labor practice complaint against an employer based on three

charges that it had previously dismissed. The facts underlying

these charges occurred more than six months prior to the filing

of the formal complaint by the General Counsel. The Board

dismissed the complaint as barred by the six-month statute of

limitations prescribed by section 10(b) of the National Labor

Relations Act ("NLRA"), 29 U.S.C. 160(b). In addition, the

Board rejected the General Counsel's alternative effort to

resuscitate these dismissed charges, finding amendment to a

timely charge improper since the charges were not "closely

related." We affirm the first decision, but reverse on the

latter.

I

BACKGROUND

The Union represents certain employees of Girardi

Distributors, Inc., (the "Company"), a liquor distributor that

operates several distribution facilities in northwestern

Massachusetts. Over the years, the employees and the Company

entered into collective bargaining agreements, the most recent of

which covered from 1986 to May 19, 1989. In April of 1989, the

Union and the Company began negotiations for a new agreement.

The negotiations did not progress well. On May 19,

1989, the Union filed its first unfair labor practice charge

-2-

(case 1-CA-26394), alleging violation of 8(a)(1), (3), & (5)

of the NLRA, 29 U.S.C. 158(a)(1), (3), & (5).1 The General

Counsel of the Board dismissed the charge through the Office of

the Regional Director on July 19, 1989. Addressing the main

thrust of the charge, the Regional Director refused to bring a

complaint because, in its view, the investigation did not reveal

sufficient evidence of bad faith bargaining. Negotiations

between the Company and the Union continued during the Regional

Director's investigation. As a result of the investigation, the

charges were dismissed and the Union did not appeal the

dismissal.

The Union remained dissatisfied with the negotiations

and felt certain that the Company sought to bust the Union. In

June, the Company made its "last, best, and final offer," which

significantly undercut the wages and benefits received by the

members of the bargaining unit under the 1986-89 labor agreement.

Despite the final offer the parties continued to hold bargaining

sessions. The Union filed its second charge (case 1-CA-26561) on

1 Section 8(a)(1) makes it an unfair labor practice for an
employer to "interfere, restrain or coerce employees" in the
exercise of their section 7 rights to engage in "concerted
activities for the purpose of collective bargaining or other
mutual aid or protection." 29 U.S.C. 157, 158(a)(1).

Section 8(a)(3) makes it an unfair labor practice for an
employer "to encourage or discourage membership in any labor
organization" by "discrimination in regard to hire or tenure."
Id. 158(a)(3).

Section 8(a)(5) requires that an employer "bargain
collectively with the representatives of his employees" and to do
so in good faith. See id. 158(a)(5); NLRB v. Insurance

Agents' Int'l Union, 361 U.S. 477, 498 (1960).

-3-

August 4, 1989, alleging the same statutory violations but

providing more factual support for the bad faith bargaining

claim. The Regional Director again dismissed the charges and the

General Counsel's National Office of Appeal upheld the dismissal.

On September 8, 1989, the Union filed its third charge

(case 1-CA-26660, which was amended several times) on the same

general grounds with further factual support. Certain statements

made by management, which were held improper under 8(a)(1),

were the subject of an informal settlement agreement,2 while the

other charges were dismissed. The Union unsuccessfully appealed

the dismissal of the other charges.

By the end of 1989, despite numerous negotiation

sessions, the Union and the Company had not reached an agreement.

After the Union lost its appeal on the third set of charges, the

Company withdrew its final offer. On April 14, 1990, the Company

purportedly subcontracted the bargaining unit work to Suburban

Contract Carriers, Inc. ("Suburban"), terminated its union

employees, and withdrew its recognition of the Union as the

exclusive collective bargaining representative of the bargaining

unit.

2 The Regional Director approved the unilateral informal
settlement on February 22, 1990. The Company complied with the
settlement's posting requirement. The case, however, was never
closed because of the pendency of a fourth set of charges (case
1-CA-27243) filed in April of 1990. The Regional Director
vacated and set aside the settlement agreement when it issued the
Consolidated Complaint that sought to reinstate the three charges
dismissed in 1989. The Union's second basis for avoiding the
statute of limitations pertains to this settlement agreement and
is discussed infra.

-4-

On April 16, 1990, the Union filed a fourth set of

charges (case 1-CA-27243), alleging the Company violated

8(a)(1) & (5) by refusing to supply the name of the subcontractor

to the Union, and by unilaterally subcontracting the bargaining

unit work. Finally, the General Counsel filed a complaint and

set the hearing date for November 19, 1990.

On the morning of the hearing, the General Counsel

received new testimony from the principals of Suburban, David

Murphy and Peter DeVito. The proceedings were adjourned with the

consent of the parties. Based on the testimony of Murphy and

DeVito, the Regional Director further investigated the Union's

charges and procured testimony from Kenneth White, the Company's

former operations manager, and Daniel Maroni, another employee

close to management, which was damaging to the Company.

In March of 1991, the Regional Director issued a

Consolidated Complaint, which revived the three charges dismissed

in 1989 (cases 1-CA-26394, 1-CA-26561, 1-CA-26660), and an

Amended Complaint, which amended case 1-CA-27243. The

Consolidated Complaint alleged that the Company had engaged in

bad faith bargaining from April through September of 1989 and had

unlawfully implemented its final offer. The Amended Complaint

charged that failure to provide the name of the subcontractor and

withdrawal of recognition of the Union violated sections 8(a)(1)

& (5), and that subcontracting the bargaining unit's work to a

subcontractor that was the alter ego of the Company and

discharging the Union employees violated sections 8(a)(1) & (3).

-5-

With respect to the Amended Complaint, the

Administrative Law Judge ("ALJ") found that the Company had

violated the NLRA and ordered the Company to cease and desist

from subcontracting the bargaining unit work anew, to recognize

the Union, and to restore the status quo in existence before the

false subcontractor was engaged. With respect to the

Consolidated Complaint, the ALJ found that the General Counsel

had stated a prima facie case that the Company had bargained in

bad faith, that impasse had not been reached, and that

implementation of the final offer was unlawful. Nevertheless,

the ALJ dismissed the Consolidated Complaint because under

10(b) the charges dismissed in 1989 could not be reinstated more

than six months after the acts underlying those charges had

occurred. The ALJ found that the General Counsel did not satisfy

the fraudulent concealment exception to the statute of

limitations because it failed to demonstrate that facts had been

fraudulently concealed, and because the Union and the General

Counsel did not exercise due diligence in discovering the factual

basis for the charges. The Board affirmed and adopted the

decision and order of the ALJ.

The Union appeals the dismissal of the Consolidated

Complaint. The dismissed charges warrant reinstatement,

according to the Union, because the Company fraudulently

concealed the operative facts supporting the charges through

affirmative acts of concealment and by a "self-concealing"

scheme, and because the Union and the General Counsel exercised

-6-

due diligence to uncover the evidence. Alternatively, the Union

asserts that the dismissed 8(a)(3) and (5) allegations were

"closely related" to the 8(a)(1) charges in the informal

settlement agreement reached in case 1-CA-26660. As the

agreement was later set aside by the Regional Director, the

8(a)(3) and 8(a)(5) charges in the Consolidated Complaint may be

reinstated by amendment to the now timely 8(a)(1) charge.

II

Section 10(b) of the NLRA prescribes a six-month

statute of limitations for the filing of unfair labor practice

charges.3 In Ducane Heating Corp., 273 N.L.R.B. 1389 (1985),

enforced without opinion, 785 F.2d 304 (4th Cir. 1986), the Board

extended the breadth of 10(b) to prohibit the reinstatement of

dismissed charges outside the six-month period. The Board also

held that the limitations period is tolled when "a respondent

fraudulently conceals the operative facts underlying the alleged

violation." Ducane Heating, 273 N.L.R.B. at 1390. The period

will begin to run anew when "the charging party knows or should

have known of the concealed facts." Id. In effect, the Board

borrowed the federal doctrine of fraudulent concealment, which is

an "equitable doctrine read into every federal statute of

limitations." Holmberg v. Armbrecht, 327 U.S. 392, 397 (1946);

O'Neill, Ltd., 288 N.L.R.B. 1354, 1988 WL 214303 at * 57.

3 "[N]o complaint shall issue based upon any unfair labor
practice occurring more than six months prior to the filing of
the charge with the Board and the service of a copy thereof upon
the person against whom such charge is made . . . ." 29 U.S.C.
160(b).

-7-

While the language of 10(b) does not apply on its

face to the reinstatement of dismissed charges, the Board is free

to fill a "gap" left in the statute by applying 10(b) to

dismissed charges and by fashioning its own rule of fraudulent

concealment to toll the statute of limitations. Chevron USA,

Inc., v. Natural Resources Defense Council, Inc., 467 U.S. 837,

843-44 (1984). Traditionally the Board has been accorded

"deference with regard to its interpretation of the NLRA as long

as its interpretation is rational and consistent with the

statute." NLRB v. United Food & Commercial Workers Union, Local

23, 484 U.S. 112, 123 (1987). The Court of Appeals for the

District of Columbia found the application of 10(b) to

dismissed charges to be reasonable and consistent with the

underlying policy of the statute in District Lodge 64, Int'l

Ass'n of Machinists and Aerospace Workers v. NLRB, 949 F.2d 441,

445 (D.C. Cir. 1991). We agree with that determination. In the

absence of a clear statement from Congress on the application of

the fraudulent concealment tolling doctrine in the 10(b)

context, we must defer to the Board's reasonable interpretation.

Chevron, 467 U.S. at 843-44. We turn now to the Board's

formulation of its interpretation and to whether it is

permissible.

The Board's reluctance to delimit the precise contours

of the fraudulent concealment doctrine as applied to 10(b) has

been a matter of some frustration for the federal courts. See

NLRB v. O'Neill, 965 F.2d 1522, 1527 (9th Cir. 1992); District

-8-

Lodge 64, 949 F.2d at 449 (remanding fraudulent concealment issue

because court was "unable to make enough sense of the Board's

opinion to justify affirmance"). In this case, the Board,

adopting the ALJ's reasoning and conclusions, purported to rely

on the general federal fraudulent concealment doctrine as

explained by an earlier Board decision, O'Neill, Ltd., 288

N.L.R.B. 1354 (1988), and by the Court of Appeals for the

District of Columbia in Hobson v. Wilson, 737 F.2d 1, 33-36 (D.C.

Cir. 1984), cert. denied sub. nom., Brennan v. Hobson, 470 U.S.

1084 (1985). Nevertheless, the Board appears to have adopted a

rule that is different from the one upon which it claims to rely.

In Hobson, the Court of Appeals for the District of

Columbia recognized two means by which fraudulent concealment can

occur -- by affirmative acts of concealment or by a "self-

concealing" wrong or scheme. The Hobson court held that a

plaintiff may establish a self-concealing wrong by demonstrating

that the defendant "engage[d] in some misleading, deceptive or

otherwise contrived action or scheme, in the course of committing

the wrong, that is designed to mask the existence of a cause of

action." Hobson, 737 F.2d at 34-35. The court announced a broad

and inclusive understanding of self-concealing wrongs, stating

that "[t]he deception may be as simple as a single lie or as

complex as [a scheme], so long as the defendants conceal 'not

only their involvement, but the very conduct itself.'" Id. at

34-35 (citation omitted).

Based on Hobson and its belief that O'Neill, Ltd.

-9-

adopted Hobson's reasoning, the Union contends that it has

demonstrated fraudulent concealment and that the statute of

limitations was tolled. The Union's argument proceeds roughly as

follows: Normally, in the course of negotiation each party at a

bargaining session attempts to force the other side to accept

concessions. The NLRA requires that the parties meet and bargain

in good faith, but does not require that they reach agreement.

See NLRB v. Insurance Agents' Int'l Union, 361 U.S. 477, 490-01

(1960); Soule Glass & Glazing Co. v. NLRB, 652 F.2d 1055, 1103

(1st Cir. 1981) ("Adamant insistence on a bargaining position . .

. is not in itself a refusal to bargain in good faith.")

(citation omitted). Therefore, in the average "surface"

bargaining case (bargaining without the intent to reach an

agreement) the central issue is motive. As the Union perceives

the issue, the deception committed by the Company was

misrepresenting bad faith or surface bargaining as good faith

bargaining. The self-concealing wrongs were the statements to

the Board that the Company honestly put forward negotiating

positions with a good faith bargaining intent. In the Union's

view, the Company prevented the Union from discovering the cause

of action, despite the Union's due diligence, by fraudulently

concealing the operative fact -- its bad faith. In effect, the

Union argues that tolling continues as long as the concealment

has so impaired its case that it is unable to furnish to the

General Counsel with, or the General Counsel cannot discover,

sufficient evidence to file a formal complaint before the Board.

-10-

We fully understand the rationale supporting the

Union's stance. In this case, the Union filed three separate

charges alleging essentially the same grievance -- that the

Company was surface bargaining and its true intent was to destroy

the Union. These charges were dismissed on three separate

occasions and twice on appeal. The General Counsel explained, in

its memorandum in support of exceptions to the ALJ decision, that

at the time the charges were dismissed, the Company's bargaining

table conduct, the first and generally exclusive source of

evidence, revealed no indications of bad faith. Indeed, the

evidence showed that the parties were meeting and that various

proposals were being discussed. Despite the Union's claims that

the Company intended to destroy the Union, there was no concrete

evidence of that intention. The General Counsel asserted,

therefore, that it would not have brought the complaint because

the extensive paper trail compiled by the Company indicated that

it was bargaining in good faith while at the table. The General

Counsel denied that it knew all the facts subsequently considered

by the ALJ to support a prima facie case of surface bargaining.

Nonetheless, the General Counsel stated that even if it had known

the facts, it would not have brought a complaint given the

Company's conduct during discussions at the bargaining table.

Consequently, from the Union's perspective, the conduct

at the table and the position statements submitted to the

Regional Director defending against the charges, which were

designed to deceive the Union and the General Counsel, were

-11-

sufficient to conceal the cause of action and therefore toll the

statue of limitations under the self-concealing wrong theory.

The cause of action was concealed because the General Counsel

would not bring the complaint without direct evidence of illegal

intent if the bargaining table conduct at least superficially

appeared to be in good faith. Furthermore, because the General

Counsel's dismissal of the charges is unappealable,4 whether a

cause of action is concealed must be decided according to its

criteria.

While it quoted from Hobson, the ALJ's decision did not

rely on Hobson's statement of the "self-concealing wrong" theory.

The ALJ stated that the Board had never found fraudulent

concealment without some affirmative act, even if it was simply

affirmative verbal misrepresentation. Girardi Distributors,

Inc., 307 N.L.R.B. No. 236, 1992 WL 18679 at *38 n.24 (citing

Brown & Sharpe Mfg., 299 N.L.R.B. No. 89 (1990); Kanakis Co., 293

N.L.R.B. No. 50 (1989); Strawsine Mfg., 280 N.L.R.B. 553 (1986);

Garrett Railroad Car & Equipment, Inc., 275 N.L.R.B. 1032

(1985)). The ALJ specifically noted that the Board's decision in

O'Neill, Ltd., which also quoted extensively from Hobson, did not

4 Procedurally, the charging party files a complaint with the
Regional Director and if the Regional Director decides to dismiss
the charge its decision may be appealed only to the General
Counsel, not to the Board or the courts. Consequently, the
General Counsel's decision to dismiss is final. See United Food

& Commercial Workers Union, 484 U.S. at 118-19 & nn.8 & 10. We

note the force of the Union's analogy to the rule that a party
who commits a "fraud on the court" should not expect the benefits
of repose bestowed by the statute of limitations. See Hazel

Atlas Glass Co. v. Hartford Empire Co., 322 U.S. 238 (1944).

-12-

turn on Hobson's expansive definition of what sort of self-

concealing wrong could be considered fraudulent concealment

sufficient to toll the statute of limitations. The ALJ read

O'Neill, Ltd. to require a showing that "there were affirmative

misrepresentations made (exculpatory statements aside) with

respect to the dismissed charges," and that there was a self-

concealing scheme in place (as opposed to a single lie). Girardi

Distrib., 1992 WL 18679 at *29 (citing O'Neill, Ltd., 288

N.L.R.B. at 1355). Under this formulation, there must be an

affirmative misrepresentation other than telling the General

Counsel and the charging party that the accused is not engaged in

surface bargaining and supplying rational excuses for the

accused's conduct at the bargaining table. See id. at *38

n.23.5 The ALJ's conception of the scheme necessary seems

rather great indeed; he appeared to require a showing of "some

master plan of contingencies that would be triggered by unfolding

events." Id. at *29.

We agree with the ALJ that, to the extent O'Neill, Ltd.

discusses the more relaxed standard of self-concealing wrongs

explained in Hobson, those statements are only dicta. O'Neill,

5 The ALJ relied on the Board's statement in O'Neill, Ltd. that

"the mere fact that a party makes exculpatory representations
does not, by itself, constitute fraudulent concealment or serve
to toll the 10(b) period." 288 N.L.R.B. 1353, n.10 (1988)
(citing Al Bryant, Inc., 260 N.L.R.B. 128, 133-35 (1982)).

We note that we find this rule rather peculiar because we can
think of no reason to distinguish "exculpatory" statements to the
Board designed to avoid a formal complaint from any other lie
that a party may proffer to avoid sanctions for unfair labor
practices.

-13-

Ltd. did not announce the rule upon which the Union now urges

that we rely.6 It is impossible to say what deceptive actions,

short of proof of a complicated scheme replete with contingency

plans to get rid of the Union, would satisfy the Board. It is

clear, however, that the deception that the Board now requires is

significantly more than the "single lie" which the Hobson court

rule would accept.

Irrespective of the extent of the effort to conceal,

the fraudulent concealment doctrine will not save a charging

party who fails to exercise due diligence, and is thus charged

with notice of a potential claim. Girardi Distrib., at * 28-29;

Hobson, 737 F.2d at 35.7 Normally, when the party seeking to

toll the statute by fraudulent concealment alleges affirmative

acts of concealment, the burden of showing due diligence falls on

that party. Morales v. Rosa-Viera, 815 F.2d 2, 5 (1st Cir.

1987). The opposite rule applies, however, when the charging

party alleges that the statute is tolled by a self-concealing

6 We note parenthetically that the Board would probably be able
to develop a new rule, or narrow a present one, without offending
decisions limiting an agency's authority to apply such rules
retroactively. See Chevron Oil Co. v. Huson, 404 U.S. 97 (1971);

District Lodge 64, 949 F.2d at 446-48. The absence of a clear

rule would negate any claim of reasonable reliance, which is
necessary for a finding that application of the new rule would
cause "substantial inequitable results." See District Lodge 64,

949 F.2d at 448.

7 The party seeking the shelter of the 10(b) affirmative
defense bears the burden of proving "clear and unequivocal notice
-- either actual or constructive -- of the acts that constitute
the alleged unfair labor practice." John Morrell & Co., 304

N.L.R.B. No. 116, 1991 WL 181868 at *5; Pennsylvania Energy

Corp., 274 N.L.R.B. 1153, 1155 (1985).

-14-

wrong, in which case the defendant bears the burden. Hobson, 737

F.2d at 35. Thus, "[w]hen tolling is proper because the

defendants have concealed the very cause of action, . . . they

have the burden of coming forward with any facts showing that the

plaintiff could have discovered . . . the cause of action if he

had exercised due diligence." Id. (quoting Richards v. Mileski,

662 F.2d 65, 71 (D.C. Cir. 1981)). In another significant

departure from the Hobson decision, the Board here placed the

burden of proving the exercise of due diligence in discovering

the fraud on the party seeking to toll the statute of

limitations. The significance of which party bears the burden of

proof on due diligence is palpable in this case because, in large

measure, the Board's decision turned on the utter absence of

evidence of due diligence by the Union and the General Counsel.

Nevertheless, because courts apportion this burden differently,

compare Hobson, 737 F.2d at 35 (placing burden on party seeking

shelter of statute of limitations in self-concealing wrong case)

with NLRB v. O'Neill, 965 F.2d 1522, 1527 (9th Cir. 1992)

(placing burden on party seeking to toll statute of limitations

in self-concealing scheme case), we cannot say that the Board's

decision is unreasonable and therefore must defer to it.

Chevron, 467 U.S. at 843-44.

Having established the legal tests governing the

Board's decision, we turn to the Board's findings of fact. We

must accept the Board's factual findings if they are supported by

substantial evidence on the record when considered as a whole.

-15-

29 U.S.C. 160(f); Universal Camera Corp. v. NLRB, 340 U.S. 474,

488 (1951). In this case, the Board adopted the ALJ's findings

and conclusions. The ALJ found that the Company did not

fraudulently conceal by affirmative actions the operative facts

underlying the dismissed charges. The ALJ exhaustively reviewed

the evidence and found that the General Counsel had made a prima

facie case of bad faith or surface bargaining based on (1)

evidence of the Company's generalized intent to bust the Union;8

(2) the discrepancy between wage proposals for union workers and

the wages paid to nonunion workers at other Company facilities;

(3) the solicitation of replacement workers early in the

bargaining process; (4) the expressed belief that the proposals

would provoke a strike; and (5) the statements of operations

manager, Ken White, indicating that better wages and benefits

would be provided if the employees renounced the Union. The ALJ

therefore concluded that the operative facts could not have been

fraudulently concealed because the Union and the General Counsel

knew the facts supporting the prima face case when the dismissed

charges were originally filed by the Union. Finally, the ALJ

determined that the dismissed charges could not be reinstated

because the Union and the General Counsel had offered no evidence

that they had exercised due diligence to uncover the alleged

8 The record evidence showed that the Union membership
understood that the Company wanted to get rid of the Union. This
general animus began after George Girardi, Jr. took over
management of the Company from his father. As the Union notes,
everyone was aware of this animus after 1985, and, despite this
antipathy, the parties were able to reach an accord in 1986.

-16-

fraud.

Given the narrow scope of the fraudulent concealment

doctrine in the 10(b) context, we cannot conclude that the

Board's findings of fact and conclusions are unsupported by

substantial evidence in the record. Consequently, they must

stand. The strength of the Union's argument proceeded from the

evidence of intent garnered from statements made by former

insiders not available to the General Counsel or the Union at the

time the charges originally were filed. The Board was not

swayed; it explicitly held that the new evidence did not alter

its calculus.

Clearly there is an incongruity between what the Board

and the General Counsel find sufficient to state a claim of

surface bargaining. The Board's prima facie case, and hence its

finding of notice, rests on facts which it holds constitute

constructive, as opposed to actual, evidence of bad faith or

intent. The ALJ asserted that a surface bargaining case must be

made on the basis of the "totality of respondent's observable

conduct." Girardi Distrib. at *29. In contrast, the General

Counsel contended in this case that it normally would not bring a

formal unfair labor practice complaint, irrespective of the

surrounding circumstances, in cases in which the bargaining table

conduct appeared to be in good faith. The ALJ specifically

rejected the General Counsel's suggestion to follow the Hobson

court's statement of fraudulent concealment, stating, "[i]f I

agreed with the position of the General Counsel, virtually every

-17-

surface bargaining case would be potentially exempt from the

strictures of section 10(b), needing only some newly discovered

evidence of intent to surface." Id.

This incongruity places the charging party in a

difficult position. A charging party cannot get the General

Counsel to file a timely complaint if it only possesses

circumstantial evidence supporting a finding of bad faith. On

the other hand, its timely charges that the General Counsel

unappealably dismissed will not be reinstated if the General

Counsel later finds direct evidence of bad motive because the

Board construes evidence of constructive intent based on the

totality of the circumstances as notice of the claim. That is

what happened in this case.

While we believe the Court of Appeals for the District

of Columbia's construction of the fraudulent concealment

doctrine urged by the General Counsel and the Union to be a

better and more equitable rule for the victims of surface

bargaining, the Board ultimately controls the terms of 10(b)

unless its interpretation is unreasonable. We may not supplant

the Board's judgment since the Board reasonably adopted a less

expansive fraudulent concealment doctrine that it viewed as more

faithful to industrial relations policy favoring finality in the

resolution of labor disputes. We note, however, that under the

present formulation, the General Counsel will rarely demonstrate

fraudulent concealment in surface bargaining cases. Therefore,

instead of waiting for the smoking gun, the General Counsel

-18-

should search diligently for circumstantial evidence of unlawful

intent as understood by the Board to prevent sound unfair labor

practice charges from being barred by the 10(b) statute of

limitations. Investigation should include interviewing senior

bargaining representatives or company presidents concerning their

intention to bargain in good faith and their union animus, if

only to later assert misrepresentation that tolls the statute of

limitations.9

III

We turn now to the Union's second argument to avoid the

statute of limitations bar. The third set of charges dismissed

in 1989 (case 1-CA-26660) involved several charges. It alleged,

inter alia, violations of 8(a)(5) for bad faith bargaining and

8(a)(1) based on statements made by the Company's operations

manager promising improved wages and working conditions if the

workers renounced the Union.10 All the charges except the

8(a)(1) charge, were dismissed. The 8(a)(1) charge was the

subject of a unilateral informal settlement agreement approved by

the Regional Director.11 Because settlement agreements may be

set aside if the provisions are breached or subsequent unfair

labor practices are committed, see Universal Blanchers, Inc., 275

9 The General Counsel stated before the Board that such
interviews would be fruitless because individuals do not admit to
unfair labor practice violations.

10 See supra note 1.

11 The Company agreed to post the appropriate notice to remedy
the infraction.

-19-

N.L.R.B. 1544, 1545 (1985), the Regional Director did not close

case 1-CA-26660. The Regional Director rescinded the settlement

agreement and asserted that the Consolidated Complaint was

"closely related" to the then-resurrected 8(a)(1) charge, and

therefore not time-barred.12 The Union proffers this same

argument on appeal.

In Nickles Bakery of Indiana Inc., 296 N.L.R.B. 927

(1989), the Board summarized the closely related test established

in Redd I, Inc., 290 N.L.R.B. 1115 (1988):

First, the Board will look at whether
otherwise untimely allegations involve
the same legal theory as the allegations
in the pending timely charge. Second,
the Board will look at whether the
otherwise untimely allegations arise from
the same factual circumstances or
sequence of events as the pending timely
charge. Finally, the Board will look at
whether a respondent would raise similar
defenses to both allegations.

Nickles Bakery, 296 N.L.R.B. at 928 (footnotes omitted).

Applying this standard, the ALJ rejected the "closely related"

argument. In addition, while the ALJ agreed that the informal

settlement agreement could be set aside due to the charges

pending in the Amended Complaint, he ultimately recommended that

12 The six-month limitations period applies only "to the filing
and service of the charge, not to the issuance or amendment of
the complaint." NLRB v. Overnite Transp. Co., 938 F.2d 815, 820

(7th Cir. 1991); accord Sonicraft, Inc. v. NLRB, 905 F.2d 146,

148 (7th Cir. 1990), cert. denied, 111 S.Ct. 671 (1991). A

complaint based on a timely filed charge may be amended to
include other allegations if they are "closely related" to the
underlying timely charge and occurred within six months of the
charge. See Eastern Maine Medical Center v. NLRB, 658 F.2d 1, 6

(1st Cir. 1981); see also NLRB v. Complas Indus., Inc., 714 F.2d

729, 734 (7th Cir. 1983).

-20-

it be reinstated. The ALJ favored reinstatement because

rescinding the agreement served no purpose in light of its other

holding that the 8(a)(1) allegations were not "closely related"

to the 8(a)(5) charges. Girardi Distrib. at *31-*33 & n.30.

The Board adopted the ALJ's recommendations and conclusions.

Appellee Company urges that we may not consider the

"closely related" theory supporting reinstatement of dismissed

charges. It reasons that because neither the General Counsel nor

the Union raised objections to the reinstatement of the set aside

settlement agreement, the Union has waived its right to do so

now. See 29 U.S.C. 160(e);13 Woelke & Romero Framing, Inc.

v. NLRB, 456 U.S. 645, 665 (1982); Detroit Edison Co. v. NLRB,

440 U.S. 301, 311 & n.10 (1979). It follows, then, that since

the settlement agreement disposing of the 8(a)(1) charges has

been reinstated, no timely charge exists to which the dismissed

charges of the Consolidated Complaint can be "closely related."

It is true that the General Counsel did not object

specifically to the reinstatement of the set aside settlement

agreement before the Board.14 The General Counsel objected

strenuously, however, to the ALJ's decision that the 8(a)(5)

charges were not "closely related" to the 8(a)(1) charges. We

13 Judicial review is barred by 10(e) of the Act, 29 U.S.C.
160(e), which provides that "[n]o objection that has not been
urged before the Board . . . shall be considered by the court,
unless the failure or neglect to urge such objection shall be
excused because of extraordinary circumstances."

14 Nor did the Union, although it could have intervened in the
appeal to the Board. See 29 U.S.C. 10(f).

-21-

think that the exception taken on this ground challenged the

recommendation to reinstate the set aside agreement with

sufficient particularity to survive the rule waiving issues not

timely raised. By attacking the ALJ's decision on the "closely

related" issue, the General Counsel attacked the ALJ's rationale

for reinstatement. Thus, the General Counsel implicitly objected

to reinstatement of the set aside agreement.

We therefore consider whether the charges in the

Consolidated Complaint were closely related to the 8(a)(1)

charge. While the ALJ found that none of the elements of the

test had been met, his explanations were less than satisfactory.

We examine each in turn.

The ALJ combined the "same legal theory" and "similar

defense" components of the test, asserting that the legal

theories behind each charge were "far different," but only

illustrating the differences between the defenses that would be

raised to each charge. The ALJ stated that the only defense to

the 8(a)(1) charge was that the statements had not been made.

In contrast, a defense to the 8(a)(5) charge would involve

detailed explanations of each step taken by the Company

throughout the negotiations and disintegration of the parties'

relationship. The only connection that the ALJ could see between

the two sets of charges was "their bearing on the issue of

intent." Girardi Distrib. at *33.

With respect to the "same factual circumstances or

sequence of events" element of the test, the ALJ imposed an

-22-

extremely high burden regarding the required nexus. Without

proof that the Company specifically directed the operations

manager, Ken White, to make the 8(a)(1) statements as part of a

"scheme" to get rid of the Union, the ALJ rejected the assertion

that the statements were part of the same factual situation or

sequence of events. He concluded that the statements were

"simply isolated statements reflecting the common knowledge of

all [the Company's] employees that Mr. Girardi would like to get

rid of the Union." Id. at *32.

We think that the ALJ's factual conclusions are not

supported by substantial evidence in the record and that the ALJ

misapplied the closely related test. With respect to the

similarity between the legal theories underlying each charge, it

is clear that the allegations need not be under the same

statutory section. See Redd I, Inc., 290 N.L.R.B. 1115; NLRB v.

Overnite Transp. Co., 938 F.2d 815, 821 n.8 (7th Cir. 1991). It

is sufficient that both charges are part of the same effort or

crusade against the union. See, e.g., Overnite Transp. Co., 938

F.2d at 821; Texas World Service Co. v. NLRB, 928 F.2d 1426, 1437

(5th Cir. 1991). In this case, the ALJ conceded that the

8(a)(1) statements were probative of the Company's intent when

dealing with the Union, which was the central issue for the bad

faith bargaining charges under 8(a)(5). It would seem then

that the charges involved the same legal theory, broadly

speaking.

We do not understand the ALJ's finding that the

-23-

statements by White were just isolated statements confirming

facts already known to the Union. As we stated earlier, the

evidence did not support finding a detailed "scheme" with

contingency plans. The factual nexus required under the closely

related test, however, does not demand that General Counsel

establish that sort of a conspiracy. Charges will be found

closely related factually if they arise from the same "sequence

of events." Earlier in his opinion, the ALJ found that after the

bargaining unit members complained about the wage difference

between the Company's union and nonunion employees, White,

"acting on information given him by Mr. Girardi, advised the men

they could have the benefits afforded the nonunion personnel if

they decertified." Girardi Distrib. at *26. Thus, despite the

inconsistency in the ALJ's characterization of the impetus for

the statements, it is clear that the Company directed White to

make the antiunion statements in violation of 8(a)(1). The ALJ

also relied upon White's statements in determining that the prima

facie case on surface bargaining existed. Finally, the evidence

indicated that White played an important role in the campaign to

bust the Union, even if the evidence did not support a finding

that a detailed conspiracy existed by which the Union's ouster

would be accomplished. Consequently, we think the facts

underlying the two charges are factually "closely related."

The fact that the defenses to the 8(a)(5) charges

would be much more detailed and lengthy in their presentation, as

the ALJ found, is not fatal to a finding that the charges are

-24-

closely related. Taken as a whole, the closely related test

seeks to ensure that the General Counsel does not amend a charge

to include unrelated infractions of the NLRA. Each component of

the test adds specificity to the inquiry. The "same defense"

prong of the test is but another way to ferret out amendments

which involve extraneous material. In defending against the

8(a)(5) charge the Company would attempt to show that White's

statements were not part of its effort to decertify the Union and

that its efforts to bust the Union did not include surface

bargaining. The overlap between the subject matter of the

defenses is readily apparent. The Union, therefore, has met the

"closely related" test and the merits of the charges in the

Consolidated Complaint warrant consideration.

IV

We affirm the Board's holding with respect to the

10(b) bar. We reverse the reinstatement of the set aside

settlement agreement and remand for a hearing on the Consolidated

Complaint having found those charges closely related to the

timely 8(a)(1) charges underlying the set aside agreement.

-25-